Milton Silverglade and Bessie M. Silverglade v. Commissioner.
Silverglade v. Commissioner
Docket No. 55601.
United States Tax Court
T.C. Memo 1957-190; 1957 Tax Ct. Memo LEXIS 67; 16 T.C.M. (CCH) 858; T.C.M. (RIA) 57190; September 30, 1957
Milton Silverglade, 829 Alberca Street, Coral Gables, Fla., pro se. Hubert E. Kelly, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income taxes and additions to tax under sections 291(a), 294(d)(1)(A), and 294(d)(2) of the Internal Revenue Code of 1939 against petitioners, Milton Silverglade and Bessie M. Silverglade, for the taxable years 1948, 1949, and 1951, and against petitioner Milton Silverglade for the taxable year 1950 in the following amounts: Additions to Tax
Sec.
Income
Sec.
294(d)
Sec. 294
Year
Tax
291(a)
(1)(A)
(d)(2)
1948
$ 307.74
$111.44
$66.87
1949
697.86
$174.47
128.16
76.90
1950
762.08
38.10
96.90
61.19
1951
4,901.56
509.65
*68 By amended answer respondent claims increases in the income tax deficiency and addition to tax under section 294(d)(1)(A) for the year 1951 in the respective amounts of $4,628.58 and $381.48. Respondent concedes that the taxable year 1948 is barred by the statute of limitations. By the stipulation filed at the time of the hearing herein, all of the issues raised by the pleadings except two were settled by the the parties and effect will be given to such stipulated settlements in the recomputations to be filed under Rule 50. Of the remaining two issues, the first concerns the claim of petitioners that "The depreciation allowable against the income from the estate of Meyer Silverglade, deceased, for the" taxable years "was $995.00 yearly" instead of the amounts allowed by respondent. While reference is made to this issue in petitioners' brief, no evidence was adduced at the hearing herein which bore upon this issue, and, accordingly, no findings of fact can be made thereon. The remaining issue involves the tax consequences to petitioners of a long and complicated transaction between petitioner Milton Silverglade and the estate of his deceased father, Meyer Silverglade, beginning *69 in 1922 and culminating (so far as this case is concerned) in 1951, more fully described in our findings of fact. Findings of Fact A stipulation of facts has been filed herein and we find the facts to be as stipulated. Petitioners, Milton Silverglade (hereinafter referred to as the petitioner) and Bessie M. Silverglade, are individuals who reside at 829 Alberca Street, Coral Gables, Florida. They are husband and wife and the returns for the periods here involved were filed on the cash basis with the then collector of internal revenue for the district of Florida. Prior to April 4, 1922, petitioner was a partner with his father, Meyer Silverglade, in the restaurant business conducted under the name of the Hub Cafe Company, which operated the Hub Cafe at 42 East Fifth Street, Cincinnati, Ohio. Petitioner and his father each had a 50 per cent interest in the partnership. On April 4, 1922, petitioner's father died; however, pursuant to the last will and testament of Meyer Silverglade, which was duly probated, the estate of Meyer Silverglade, deceased (hereinafter referred to as the estate) continued on as petitioner's business partner, retaining the decedent's 50 per cent interest. *70 Sometime in 1922, after the death of petitioner's father, the Hub Cafe Company opened up the New Era Cafe at 612 Vine Street in Cincinnati. Article 7 of the last will and testament of Meyer Silverglade provided, among other things, as follows: "All the rest and residue of my estate, real and personal, I give, devise and bequeath to my Executors and Trustees hereinafter named, in trust nevertheless, for the following uses and purposes, vix.: To manage, control, invest and re-invest the same as they deem best, and to pay over the net income semi-annually, in equal shares to my six children, namely: Ida Feld, Rose Bachrach, Abraham Silverglade, Milton Silverglade, Bertha Loewenstein and Minnie Silverglade, during their lives. * * *" Petitioner was named one of the trustees of the estate and has remained in this capacity through the present time. On or about April 18, 1928, the estate acquired for $75,000 a 99-year lease, renewable forever, on the property located at 612 Vine Street in Cincinnati. The lease acquired by the estate provided, among other things, for an annual rental of $7,500 and that the lessee was obligated to pay taxes, assessments, and all other charges against *71 the property. The lease further provided that the lessee had the privilege of purchasing the fee of the property leased at the expiration of any 5-year period from the date of the lease upon the payment of an additional $150,000. On April 18, 1928, the estate leased the property covered by this lease to petitioner under the same terms mentioned above, except that the annual rental was fixed at $11,250 and petitioner had the privilege of purchasing the fee of the property leased only after the expiration of 30 years from the date of the lease or at the expiration of any 5-year period after the expiration of the 30-year period upon the payment of $225,000, which would have included the original $75,000 paid by the estate for its lease on this property, plus the $150,000 which the estate would have had to pay upon exercising its option to purchase the fee. During the latter part of 1929 and the early part of 1930, the business of the Hub Cafe Company suffered severe reverses and on May 31, 1930, the estate withdrew from the partnership, selling its one-half interest in the business, including fixtures and equipment, to petitioner. On May 31, 1930, petitioner executed an agreement *72 in favor of the estate which reads as follows: "In consideration of the advance by the Estate of Meyer Silverglade, Deceased, of Cincinnati, Ohio. to the undersigned, Milton Silverglade, of the sum of Nine Thousand, Four Hundred and Ninety-eight and 70/100 ($9,498.70) Dollars; and the further consideration of the execution and delivery by said Estate of Meyer Silverglade, Deceased, to the undersigned of a Bill of Sale, of even date herewith, for the full and entire one-half partnership interest of said estate in all assets and good will of restaurant business conducted under the trade name of Hub Cafe Company, operating the Hub Cafe at No. 42 East Fifth Street, Cincinnati, Ohio, and New Era Cafe at No. 612 Vine Street, Cincinnati, Ohio, receipt of which considerations is hereby acknowledged, said Milton Silverglade does hereby promise and agree to pay to said Estate of Meyer Silverglade, Deceased, the full sum of Fifteen (15,000.00) Thousand Dollars, payable in successive monthly installments each in the sum of One Hundred and Twenty-five ($125.00) Dollars, beginning August 1, 1930, none of said installments, nor said total amount, to bear interest, and said Milton Silverglade to *73 have ten days' grace, after the maturity of each of said monthly installments, for the payment of same. "In further consideration of the aforesaid, said Milton Silverglade hereby assumes and agrees to pay all outstanding obligations in connection with the business of said Hub Cafe Company, and agrees to perform all conditions and pay all rentals under all leases in connection therewith. "Said Milton Silverglade does further agree and hereby authorizes the Executors and Trustees of said Estate of Meyer Silverglade Deceased, ortheir successors, to charge any and all rights and interests which he may have in said Estate of Meyer Silverglade, Deceased, with any delinquency which he may suffer in the payment of said monthly installments." Because of the confused state of business conditions at the time, and until all of the statements came in from the creditors of the partnership, it was not known until August 1, 1930, that the total of the debts of the Hub Cafe Company partnership as of May 31, 1930, was $54,617.05. Petitioner was not in a financial position to pay these debts on August 1, 1930, or in the then immediate foreseeable future. Upon application by the trustees of the *74 estate, the Probate Court of Hamilton County, Ohio, authorized the estate to guarantee petitioner's payment of this indebtedness. A copy of such order reads as follows: "This cause came on this day to be heard upon the application of Abraham Silverglade, Milton Silverglade and Simeon H. Hurtig, Trustees of the Estate of Meyer Silverglade, deceased, for authority to guarantee the payment of a sum not to exceed fifty thousand dollars ($50,000) to creditors of Milton Silverglade, in the event the said Milton Silverglade fails to pay the said creditors; and it appearing to the Court "(a) that the said creditors are partnership creditors of the Estate of Meyer Silverglade and Milton Silverglade; and "(b) that the said creditors' obligations arose during the course of and before the expiration of said partnership, and that therefore the said Estate of Meyer Silverglade is liable to the said creditors as a member of the said partnership; and "(c) that during the course of the said partnership from the time of the death of Meyer Silverglade on April 4, 1922, to January 1, 1930, the operation of the partnership was highly profitable and the Estate of Meyer Silverglade has received therefrom *75 approximately the sum of one hundred and thirty thousand dollars ($130,000); and "(d) that the various heirs and beneficiaries of the trust created by the will of Meyer Silverglade have been consulted and have approved the giving of the said guarantee by the Estate of Meyer Silverglade to the creditors of Milton Silverglade in an amount not to exceed fifty thousand dollars ($50,000); and it further appearing to the Court that as security for the making of the said guarantee by the said Estate of Meyer Silverglade to the said creditors of Milton Silverglade, the latter has agreed to assign to the said Estate all his right, title and interest in the perpetual lease of the property known as 612 Vine Street, Cincinnati, Ohio, the premises being approximately 27 X 94 feet, and that in the judgment of the said Trustees the equity of the said Milton Silverglade therein is worth more than the amount of the guarantee which the said Estate would be called upon to make; and it further appearing that the said Milton Silverglade has agreed to assign one hundred thousand dollars ($100,000) worth of life insurance to the said Estate to reimburse it for any payments made and also to make possible *76 the payment of the remainder of the indebtedness in the event of the death of Milton Silverglade before the said indebtedness shall have been fully paid; and it further appearing that the said Milton Silverglade has agreed that the said Estate shall also have the right to charge his interest in the said Estate with any indebtedness for which he may be liable to the said Estate until the said advances are fully returned by him to the said Estate; "It is therefore considered and ordered by this Court that the said Abraham Silverglade, Milton Silverglade and Simeon H. Hurtig, Trustees of the said Estate of Meyer Silverglade, be and they hereby are authorized to execute an agreement with the creditors of Milton Silverglade providing for the guarantee by the said Estate of the payment of the partnership obligations of the said creditors in an amount not to exceed fifty thousand dollars ($50,000), in the event of the failure of the said Milton Silverglade to make the said payments." On August 1, 1930, petitioner executed promissory notes totaling the aggregate amount of $54,617.05 for the debts of the Hub Cafe Company partnership. The notes were all payable to various creditors of the *77 Hub Cafe Company partnership for various expenses of the partnership, including food supplies, utilities, etc., which were incurred prior to August 1, 1930. The estate endorsed all of these notes on the reverse side thereof as follows: "Payment Guaranteed., Estate of Meyer Silverglade, Deceased, /s/ Milton Silverglade, /s/ Abe Silverglade, /s/ Simeon H. Hurtig, EXECUTORS & TRUSTEES" In consideration of the estate's guarantee of the notes executed by petitioner, on August 1, 1930, petitioner and the estate entered into an "Indemnity Agreement" whereby petitioner assigned as collateral to the estate, among other things, his leasehold on the property at No. 612 Vine Street. Item 8 of this agreement reads as follows: "In the event that the Estate of Meyer Silverglade, Deceased, is required to make payments and advances for the account of said Milton Silverglade under the provisions of this Agreement, and that said Estate has not been reimbursed in full therefor, with 6% interest, within ten years from the date of this Agreement, by the application thereto of annuities or other rights or credits accruing to said Milton Silverglade from said Estate, and (or) by personal payment made *78 by said Milton Silverglade, then the assignment of the leasehold estate hereinabove described shall become absolute in the Estate of Meyer Silverglade, Deceased." All of the notes, plus interest, were paid on their respective due dates by the estate. In all, the total amount paid by the estate for principal and interest on these notes aggregated $57,837.26 which the estate charged on its records to an account captioned "Due from Milton Silverglade." In addition, the $15,000 mentioned in the agreement executed by petitioner in favor of the estate on May 31, 1930, was charged to petitioner's account on the records of the estate. In 1941 and 1942 the estate made periodic advances to petitioner aggregating $2,400 which were also charged to his account. Pursuant to the "Indemnity Agreement" dated August 1, 1930, the estate withheld all of petitioner's annual distributive shares of the estate income, as well as his annual trustee's fees, and credited them to his account from August 1, 1930, through December 31, 1950. In addition, sundry credits were made to the account in 1947 prior to any of the years under review. As of December 31, 1950, according to the books and records of the *79 estate, petitioner still owed the estate $18,473.65. No foreclosure action of any kind was taken by the estate on August 1, 1940, or thereafter, in connection with the leasehold assigned by petitioner to the estate and no credit made to petitioner's account as a result of its acquisition by the estate. The books and records of the estate have always been maintained under the supervision of Frank J. Crane, a certified public accountant. Crane audits and closes the books, and prepares financial reports on the estate which are sent to the trustees and filed with the probate Court of Hamilton County, Ohio. In 1951 petitioner threatened to bring suit against the estate. In October 1951 the trustees of the estate made application to the Probate Court of Hamilton County, Ohio, for an order authorizing them to pay petitioner $15,000 in full of any and all claims he had against the estate. The "Application For Authority To Compromise Claim" reads as follows: "1. On August 1, 1930, pursuant to the authority granted said Trustees by this Court, the Estate of Meyer Silverglade, deceased, entered into an agreement with the creditors of Milton Silverglade providing for the guarantee by *80 the said estate of the payment of certain obligations to said creditors, as more fully set forth in said prior application and order. "2. In connection with such guarantee, the then Trustees of the Estate of Meyer Silverglade, deceased, entered into an Indemnity Agreement with the said Milton Silverglade, said agreement providing that in the event the Estate of Meyer Silverglade, deceased, was called upon to pay such creditors of Milton Silverglade, pursuant to the guarantee referred to in Paragraph 1, that the said Milton Silverglade would repay said Estate for such advances, together with interest at the rate of 6% per annum. "3. In order to secure his promise in said Indemnity Agreement to repay any sum that might be paid to creditors by the within Estate, Milton Silverglade assigned, as collateral, all of his right, title and interest in a certain 99-year lease, renewable forever, on real estate known as 612 Vine Street, Cincinnati, Ohio, with the express provision that in the event the Estate of Meyer Silverglade made the payments to creditors for the account of Milton Silverglade as provided under the provisions of the Indemnity Agreement, and provided that the said Estate *81 was not reimbursed in full therefor with 6% interest within 10 years from August 1, 1930, then the assignment of the leasehold estate hereinbefore described would become absolute in the Estate of Meyer Silverglade, deceased. "4. In addition to the above provision, the Indemnity Agreement provided that the Estate of Meyer Silverglade, deceased, could collect all of the right, interest or credits accruing to the said Milton Silverglade from said Estate by reason of the trust established under the will of Meyer Silverglade, deceased, and credit said amounts against the indebtedness of the said Milton Silverglade. "5. Your applicants further represent that it is now the contention of Milton Silverglade that the collateral be posted with said Estate in 1930, to-wit: his interest in the leasehold estate of property at 612 Vine Street, Cincinnati, Ohio, should have been foreclosed on August 30, 1940 or thereafter, and that if said foreclosure proceeding was taken, there would be a substantial sum of money owing by said Estate to him. "6. Your applicants further represent that the Indemnity Agreement referred to above is silent insofar as any provisions for foreclosure are concerned, *82 and further, that if said property had been foreclosed in 1940, they do not know what the sale price of the collateral would have been. "7. Your applicants further represent that it is their opinion that if the collateral referred to above had been sold on or about August 30, 1940, in order to satisfy the then obligations of Milton Silverglade owing to said Estate, that it probably would have brought an amount substantially in excess of the said Milton Silverglade's obligations. "8. Your applicants further represent that Milton Silverglade is willing to accept the sum of Fifteen Thousand ($15,000.00) Dollars from said Estate in full payment for any and all claims he may have against said estate growing out of the failure of the Estate to foreclose said collateral, or arising from any other cause whatsoever, and that the Trustees are willing to pay said Milton Silverglade said sum to compromise his claim, that in the opinion of said Trustees such a compromise would be for the best interests of said Estate. "9. Your applicants further represent that the various heirs and beneficiaries of the trust created by the Will of Meyer Silverglade, deceased, have been consulted and have *83 approved the within settlement, as is evidenced by their written consent attached hereto." Pursuant to this application, the Probate Court of Hamilton County, Ohio, issued an "Order Authorizing Compromise of Claim" whereby the trustees of the estate were authorized to pay to petitioner $15,000 "in compromise and as payment in full of any and all claims he has or may have against said Estate." Pursuant to the "Order Authorizing Compromise of Claim" issued by the Probate Court of Hamilton County, Ohio, the estate paid petitioner $10,000 on October 22, 1951, and $5,000 on January 12, 1952. Upon receipt of the $10,000 paid on October 22, 1951, petitioner executed a release which reads as follows: "KNOW ALL MEN BY THESE PRESENTS: That I, MILTON SILVERGLADE, of Coral Gables, Florida, for the sole consideration of FIFTEEN THOUSAND ($15,000.00) DOLLARS, received to my full satisfaction of Abraham Silverglade, Milton Silverglade and Minnette Silverglade, as Trustees under the Last Will and Testament of Meyer Silverglade, deceased, do hereby for myself, executors, administrators and assigns, release and forever discharge the said Estate of Meyer Silverglade, deceased, from all debts, claims, *84 demands, damages, actions and causes of action whatsoever to the date of these presents, including but not exclusive of any claim I may have against said Estate for my share of income and trustee's fees from said Estate due or payable up to December 31, 1950; and including any and all claims I have or may have against said Estate growing out of the assignment, as collateral, of the leasehold estate formerly owned by me on property known as 612 Vine Street, Cincinnati, Ohio, said assignment to the Estate of Meyer Silverglade, deceased, having become absolute in said Estate on or about August 30, 1940." In 1951 the accountant for the estate charged off and climinated from its books the accounts purporting to reflect an indebtedness due the estate by petitioner. Prior to taking this action, he discussed it with Abraham Silverglade, one of the other trustees of the estate and petitioner's brother, and the attorney for the estate, Harold Baron. This chargeoff was made by the accountant pursuant to his interpretation of the "Order Authorizing Compromise of Claim." On the books of the estate, the account captioned "Real Estate - 612 Vine Street" was increased $15,000 as of December 31, 1951, which *85 was the same $15,000 ordered by the Probate Court of Hamilton County, Ohio, to be paid to petitioner. Also, on the books of the estate as of December 31, 1952, the account captioned "Real Estate - 612 Vine Street" was increased by $19,996.74, which amount was made up of the amount of $18,473.65 shown to be due from petitioner on the books of the estate as of December 31, 1950, plus legal fees and other miscellaneous costs incurred in connection with the compromise hereinbefore mentioned. Petitioner's distributive share of the income of the estate and his trustee fees for the period August 1, 1940, through December 31, 1940, and the years 1941 through 1950 are as follows: Distributive Share
of Estate
Trustee
Year
Income
Fees
8/1/40-12/31/40
$ 419.62
$ 397.83
1941
724.56
1942
601.94
858.25
1943
550.93
836.22
1944
1,399.23
960.99
1945
1,412.22
978.41
1946
1,142.53
1,007.91
1947
1,708.83
1,010.80
1948
1,388.35
894.08
1949
2,450.60
946.33
1950
3,002.48
1,045.29
Total
$14,076.73
$9,660.67
In determining the deficiencies against petitioner for 1948, 1949, and 1950, respondent included in petitioner's taxable income the amounts *86 of petitioner's trustee fees credited to his account with the estate during each of those years in the respective amounts of $1,010.80, $894.08, and $946.33. Petitioner alleges no error with regard to this action. On December 4, 1947, the trustees of the estate (including petitioner) leased the No. 612 Vine Street property to the Bob Jones Restaurants, Inc., for a period of 30 years. Under the terms of the lease it was provided that the Bob Jones Restaurants, Inc., pay an annual rental of $9,500 for the first 2 years of the lease and $12,000 thereafter and the taxes, assessments, and all other charges against the property. The lease further provided that the Bob Jones Restaurants, Inc., had the privilege of purchasing the leasehold on the property held by the estate for the sum of $100,000 after the expiration of 25 years from the date of the lease upon 90 days' notice. At the time this lease was executed Bob Jones Restaurants, Inc., paid to the estate $35,000 which was to "inure without recourse" to the estate if the option to purchase was not exercised or if any rentals were not paid within 45 days after they became due. In the original income tax return filed by petitioner and *87 Bessie M. Silverglade for 1951, a gain from the sale of petitioner's leasehold interest on the No. 612 Vine Street property was reported in the amount of $27,463.69. In the amended return filed by petitioner and Bessie M. Silverglade for 1951 a gain from the sale of petitioner's leasehold interest in this property was reported in the amount of $5,288.76. The original deficiency for 1951 was based upon respondent's determination that petitioner's gain on the sale of this leasehold interest was as follows: Sale price of leasehold
$33,473.65
Adjusted basis
0
Expense of sale
$107.00
107.00
Gain on sale
$33,366.65
By amended answer, respondent claims, if the court determines that there was no sale of a leasehold interest by petitioner in 1951, that petitioner received taxable income consisting of the entire amount of the indebtedness of petitioner shown upon the books of the estate and canceled in that year, and so much of the $10,000 received by petitioner in that year which represented trustee's fees due to petitioner during the period August 1, 1940, to December 31, 1950, but not actually paid to him. Opinion KERN, Judge: Upon the depreciation issue *88 petitioner introduced no evidence and we decide it in favor of respondent. The other issue has to do with whether petitioner received taxable income in 1951 as a result of his transactions with the estate of Meyer Silverglade, and, if so, the character and amount thereof. Petitioner in his returns for that year reported various amounts as capital gains received by him on the sale of a lease. He now repudiates this position and contends that his leasehold interest passed to the estate in 1940. Respondent, in his original determination of deficiency, followed petitioner's interpretation of the facts and assumed the sale of a lease (or an interest therein) in 1951. By the alternative allegations in his amended answer he recognizes the difficulties incident to any contention that there was a sale by petitioner of a capital asset in 1951. We have had little help from the parties in clearing up the confusion surrounding the question before us. Petitioner, who has some kind of an accounting business in Miami, Florida, has represented himself in this proceeding and has been far from successful in giving us either a clear and logical analysis of the facts or a clear and logical statement *89 of his contentions. To a lesser extent, and perhaps as a result of petitioner's confusion with regard to an interpretation of the facts before us, respondent has not been able to give us a completely satisfying presentation of his position. A careful consideration of all the facts of record, together with the inferences which may be fairly, although with some difficulty, drawn therefrom, leads us to a reconstruction of the transactions here involved, as follows: Petitioner acquired a leasehold interest in the Vine Street property by sublease from the estate of his deceased father in 1928, which at all times had considerable value; petitioner and the estate of which he was one of the trustees and beneficiaries, owned and operated as equal partners a restaurant business which for some years was very profitable; during the early part of the depression this business ceased to be profitable and the estate, having decided to withdraw from this business, sold its one-half interest therein to petitioner who, as consideration, agreed to pay the estate $15,000 and also to pay all of the partnership debts; after this sale it unexpectedly developed that these debts amounted to the large sum *90 of over $54,000 (a fact which does not speak well for petitioner's accounting ability) which petitioner was unable to pay; while the record does not disclose what happened to the restaurant business, petitioner was interested in having these debts paid if for no other reason than to save his leasehold interest, and the estate was interested in the payment of these debts since, as to the creditors, it remained liable therefor regardless of petitioner's agreement to pay them; the estate guaranteed and eventually made payment of all these debts, and in order to secure its reimbursement of these payments from petitioner, the primary obligor, (and also the $15,000), it obtained from him authorization to credit his account, set up to reflect the amount of these debts paid by the estate, plus interest, and the other obligations owed by petitioner, by any amounts payable to him as a trustee or beneficiary of the estate, and also an assignment of his leasehold interest which was to become absolute in 1940 unless he had before that time satisfied his obligations and reimbursed the estate in full for its payment of these debts, an eventuality which of course did not occur; thereafter, the distributions *91 from the estate to which petitioner was entitled as beneficiary and the payments to which petitioner was entitled as trustee were credited to this account instead of being made and paid to him directly, and after 1940 both petitioner and the estate considered that the conveyance to the estate of petitioner's leasehold interest had become absolute pursuant to the terms of the indemnity agreement, but no credit was made to petitioner's account reflecting the value of this leasehold interest acquired by the estate from petitioner; at some time after 1947, when the estate granted an option to a third party to acquire this leasehold for $100,000 and received $35,000 as a deposit thereon, petitioner became dissatisfied with the course of events, that is, the crediting of his distributions and trustee's fees to his account which had not been in any way reduced because of his assignment of his leasehold interest, a course of events leading to the inequitable result, as it seemed to him, of the acquisition of a valuable leasehold by the estate without any cost to it or any compensation to him; at some time in 1951, or prior thereto, he rationalized this dissatisfaction into a claim for damages *92 against the estate, based upon its failure to credit the value of the leasehold assigned by him as security for the payment of his obligations to the estate, by foreclosure or otherwise, to the reduction of such obligations, as a result of which failure he had not received for many years the payment to him of income distributions and trustee's fees which had been erroneously credited to an account which in reality he did not owe; the substance of this claim was acknowledged by the estate to be correct and a settlement was agreed to which recognized that a credit should have been made to his account because of the acquisition by the estate of his leasehold interest, that if such a credit had been made his account would have been paid many years before 1951, and, consequently, for subsequent years the income distributions and trustee's fees distributable and payable to petitioner had been erroneously credited to a nonexistent account rather than paid directly to petitioner; and pursuant to this settlement agreement petitioner was paid $10,000 in 1951, and the books of the estate were adjusted to show no account owing by petitioner. This being our interpretation of the facts, we reach *93 the following conclusions: 1. There was no sale of a capital asset by petitioner in 1951. 2. To the extent alleged by respondent, the cash payment made to petitioner by the estate in 1951 constituted ordinary income. 3. The elimination in 1951 from the books of the estate of an account receivable, shown to be owed by petitioner, was not the cancellation of a valid indebtedness owed by petitioner in that year, and did not result in taxable income to petitioner. Decision will be entered under Rule 50.